1  Paul R. Kiesel, Esq. (SBN 119854)
   kiesel@kbla.com
2  Michael C. Eyerly, Esq. (SBN 178693)
   eyerly@kbla.com
3  KIESEL BOUCHER LARSON LLP
   8648 Wilshire Boulevard
4  Beverly Hills, California 90211
   Telephone: 310/854.4444
5  Facsimile: 310/854.0812

6  Jeffrey K. Berns, Esq. (SBN 131351)
   jberns@law111.com
7  ARBOGAST & BERNS, LLP
   19510 Ventura Boulevard, Suite 200
8  Tarzana, California 91356
   Telephone: 818/961.2000
9  Facsimile: 818/867.4820

10 Attorneys for Plaintiff,
   on behalf of herself and all others similarly situated
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 GENEVA M. SPICER, on behalf of          ) **CASE NO: CV07-03456 AHS (FMOx)**
   herself and others similarly situated,   )
16                                           ) [Hon. Alicemarie H. Stotler]
                                             )
17              Plaintiffs,                  ) **PLAINTIFF'S OPPOSITION TO**
                                             ) **FDIC-RECEIVER'S *EX PARTE***
18 v.                                        ) **APPLICATION TO VACATE**
                                             ) **TEMPORARY RESTRAINING ORDER**
19 INDYMAC BANK, F.S.B.;                     )
   INDYMAC BANCORP, INC.; and                )
20 DOES 1 through 200, inclusive,            )
                                             )
21              Defendants.                  )
                                             )
22                                           )
   _____  )
23

24        Plaintiff Geneva M. Spicer ("Plaintiff") hereby opposes the *ex parte* application

25 of the Federal Deposit Insurance Corporation in its capacity as receiver for IndyMac

26 Bank, F.S.B. ("FDIC") to vacate this Court's Temporary Restraining Order ("TRO")

27 and Order to Show Cause Re: Preliminary Injunction ("OSC") as follows:

28              **MEMORANDUM OF POINTS AND AUTHORITIES**

1    This Court properly granted temporary equitable relief to Plaintiff Geneva M.

2    Spicer ("Plaintiff") by issuing the TRO and OSC Re: Preliminary Injunction.  The

3    FDIC now seeks *ex parte* to set aside the TRO prior to the October 10, 2008 O.S.C.

4    hearing re: preliminary injunction.  The arguments FDIC extends in support of its *ex*

5    *parte* Application fail because 12 U.S.C. § 1821(j) does not bar injunctive relief in

6    circumstances where the FDIC has acted contrary to its statutorily prescribed,

7    constitutionally permitted, powers or functions under that section, and here the FDIC

8    has acted contrary to its function under FIRREA by refusing to provide notice by mail

9    to all known creditors shown on the IndyMac's books and later discovered by the

10   FDIC.

11   Further § 1821(j) does not bar that which is expressly permitted of courts under

12   all other sections of 1821, and § 1821(d) permits judicial review of the FDIC's actions

13   other than claims denials.  Therefore, § 1821 on its face permits judicial review on the

14   actions which are the subject of Plaintiff's application for TRO and O.S.C. re:

15   Preliminary Injunction.

16   Lastly, the FDIC has presented no good cause for this Court to grant its

17   requested relief on an *ex parte* bases.  The FDIC faces no prejudice or harm because

18   the hearing on these issue will be conducted and these matters resolved on the merits

19   on October 10, 2008.  Therefore, the TRO currently in place does not affect the

20   October 14, 2008 claims bar date, which will be the subject of the hearing.  This

21   Court's Orders provide appropriate and timely equitable relief to the putative Class

22   Members and should remain in effect pending the additional briefing schedule and

23   October 10, 2008 hearing on these issues.

24

25   **1.    This Court is Authorized to Grant Equitable Relief Where the FDIC has**

26   **Acted Contrary to its Statutorily-Prescribed Functions under FIRREA.**

27   FDIC incorrectly argues that 12 U.S.C. § 1821(j) precludes this Court from

28   issuing injunctive relief.  Section 1821(j) "shields only 'the exercise of powers or

functions' Congress gave to the FDIC; <u>the provision does not bar injunctive relief</u> <u>when the FDIC has acted beyond, or contrary to, its statutorily prescribed,</u> <u>constitutionally permitted, powers or functions</u>." *Sharpe v. FDIC,* 126 F.3d 1147 (9th Cir. 1997)*,* citing to *National Trust for Historic Preservation v. FDIC*, 995 F.2d 238, 240 (D.C.Cir.1993), *judgment vacated*, 5 F.3d 567 (D.C. Cir. 1993), *and reinstated in relevant part*, 21 F.3d 469 (D.C.Cir.1994) (emphasis added); see also *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 708. (1ˢᵗ Cir. 1992) ("When the FDIC is clearly acting outside the scope of its statutory powers, the rationale of *Coit* would permit a district court to enjoin the FDIC,  provided, of course, that the party seeking the injunction is able to demonstrate that the standards for injunctive relief are otherwise met.")

In *Sharpe* the Ninth Circuit Court of Appeal made clear that the FDIC, acting as receiver, could not simply repudiate claimants' contracts with the failed thrift. The FDIC must follow "the prescribed mechanism" under FIRREA.  *Sharpe, supra,* 126 F.3d at 1155.  The Court did not allow the FDIC to invoke § 1821(j) to improperly wipe away claimants' breach of contract claims.

The FDIC fails to even address the *Sharpe* case in its *ex parte* papers.  Further, the *Sharpe* court is not the only one to hold that the courts maintain jurisdiction over the FDIC in instances such as this, despite § 1821(j).  *See, e.g., James Madison Limited v. Eugene Ludwig, Comptroller of the Currency*, 82 F.3d 1085, 1093 (D.C. Dist. 1996) ("We thus read section 1821(j) to prevent courts from interfering with the FDIC only when the agency acts within the scope of its authorized powers . . . § 1821(j) does indeed bar courts from restraining or affecting the exercise of powers or functions of the FDIC as aa conservator or a receiver *unless it has acted or proposed to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions*." (citing *Freeman v. FDIC,* 56 F.3d 1394 (D.C. Cir. 1995)(emphasis in original)); *see also, Elmco Properties, Inc. v. Second Natl. Fed. S & L Assn.*, 94 F.3d 914, 923 ("But § 1821 does not immunize the RTC from all

1  injunctions . .  the provision does not bar injunctive relief when the FDIC has acted or

2  proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally

3  permitted, powers or functions").[1]

4       Here, the FDIC is attempting to do just what it attempted to do in *Sharpe*.  The

5  FDIC is attempting to do away with Class Members' breach of contract, fraud, and

6  UCL claims by failing to comply with the proper mechanisms prescribed under

7  FIRREA.  The FDIC has acted contrary to its statutorily prescribed functions by

8  refusing to provide notice by mail to known creditors, i.e., the putative Class

9  Members.  Under FIRREA, the FDIC as a receiver is to act "for the protection of

10  depositors and creditors."  *Sharpe v. FDIC,* 126 F.3d 1147 (9th Cir. 1997).  FIRREA

11  mandates that the FDIC provide mail notice of the administrative claims process to all

12  creditors known or made known to the FDIC.  12 U.S.C.  § 1821(3)(C)(i) & (ii).  This

13  requirement applies not only to creditors who appear on the institution's books, but

14  also "upon the discovery of the name and address of a claimant not appearing on the

15  institution's books within 30 days of discovery" of such claimants.  12 U.S.C. §

16  1821(3)(C)(ii).  Plaintiff made Class Members claims known to the FDIC in the

17  instant action.  Despite acknowledging this responsibility, and maintaining that each

18  member of the class in a class action lawsuit must file an individual claim, FDIC

19  refuses to provide notice to the Class herein or otherwise provide them relief from the

20  administrative claims bar date.

21       The putative Class Members are not simply mortgagors or borrowers, as FDIC

22  contends.  Indeed, each of the putative Class Members are creditors of IndyMac

23  

24       [1]  *See also, e.g., Cummings Properties Management, Inc. v. FDIC*, 786 F.Supp.

25  144 (U.S. Dist. Mass. 1992) (court granting injunctive relief against FDIC as receiver

26  where public interest not adversely affected); *National Trust for Historic Preservation

27  in the United States v. FDIC,* 1993 U.S. Dist. LEXIS 21469 (U.S. Dist. D.C. 1993)

28  (granting injunctive relief against FDIC upon showing of irreparable to petitioners and

public interest favored requested relief).

1  because each has asserted claims against IndyMac, by and through Plaintiff as the

2  Class Representative in this action.  Plaintiff, as an individual and on behalf of the

3  Class Members, has asserted the right to payment from Indymac based on its alleged

4  wrongful conduct.  *McCarthy v. FDIC,* 348 F.3d 1075, 1081 (9th Cir. 2003), cited by

5  the FDIC in its *ex parte* papers, is simply inapplicable to the facts herein, where the

6  borrowers have already made claims against the failed institution.  Indeed, the putative

7  Class Members are creditors under FIRREA and, accordingly, entitled to receive

8  mailed notice of the administrative claims process from the FDIC.

9      The FDIC's refusal to mail notice to the Class Members is in violation of its

10  statutorily prescribed duties under FIRREA and violates the Class Members' due

11  process rights.  Such violations, combined with the demonstrated, compelling need for

12  equitable relief, clearly warrant this Court's intervention and issuance of the TRO.

13

14  **2.      Section 1821(j) Does Not Limit The Court's Jurisdiction in This Case**

15      The FDIC's entire argument is premised on 12 U.S.C. § 1821(j).  The FDIC

16  argues that this section allows the FDIC, in its capacity of receiver, to do whatever it

17  wants, anytime it wants, to anyone it wants, without consequence or possible recourse.

18  However, § 1821(j) only bars court action not provided for elsewhere in § 1821.  And,

19  because § 1821(d) allows judicial review of anything other than the FDIC's denial of

20  claims, this court has jurisdiction in this case.

21      12 U.S.C. 1821 is broken down into multiple parts and subparts.  Section (d) is

22  entitled " Powers and duties of Corporation as conservator or receiver."  Within

23  Section (d) there are subsections 1-16.

24      Subsection (3) is entitled "Authority of receiver to determine claims," and

25  within it are additional sub-subsections, which state:

26          (A) In general

27          The Corporation may, as receiver, determine claims in accordance with the

28  requirements of this subsection and regulations prescribed under paragraph (4).

1          (B) Notice requirements

2          The receiver, in any case involving the liquidation or winding up of the

3          affairs of a closed depository institution, shall--

4               (i) promptly publish a notice to the depository institution's

5               creditors to present their claims, together with proof, to the

6               receiver by a date specified in the notice which shall be not less

7               than 90 days after the publication of such notice; and

8               (ii) republish such notice approximately 1 month and 2 months,

9               respectively, after the publication under clause (i).

10        **(C) Mailing  required**

11        **The receiver shall mail a notice similar to the notice published under**

12        **subparagraph (B)(i) at the time of such publication to any creditor**

13        **shown on the institution's books--**

14              **(i) at the creditor's last address appearing in such books; or**

15              **(ii) upon discovery of the name and address of a claimant not**

16              **appearing on the institution's books within 30 days after the**

17              **discovery of such name and address.**

18        Subsection (5) which is also important to this analysis deals with procedures for

19  determining claims.  Subsection (5) contains a provision concerning judicial review of

20  the FDIC.  The only statement for §1821(d)(1-5) relating to limiting judicial review is

21  found here.  The statute limits judicial review only in cases relating to the denial of a

22  claim: "No court may review the Corporation's determination pursuant to

23  subparagraph (D) to disallow a claim."

24        Section 1821(j) states  "**<u>Except as provided in this section</u>**, no court may take

25  any action, except at the request of the Board of Directors by regulation or order, to

26  restrain or affect the exercise of powers or functions of the Corporation as a

27  conservator or a receiver.  Because section 1821(j) specifically excludes from its

28  denial of court jurisdiction any matter that arises out of Section 1821, there can be no

Z:\1 ARM Loan Cases\Indymac\PLEADINGS\Opposition to FDIC ex parteapplication.wpd

1   other meaning to the "except as provided in this section" language. Since subsection

2   (d) allows judicial review of everything other than the denial of a claim, subsection (j)

3   has no effect on the relief sought in the  Plaintiffs Temporary Restraining order.

4

5   **3.      There is No Good Cause to Grant The FDIC's Ex Parte Application.**

6          This Court has already set a briefing schedule and a hearing date on the issues

7   presented in  Class Members' application for temporary restraining order and opposed

8   by the FDIC in its *ex parte* application.  The hearing on these issues is set for October

9   10, 2008, which is before the October 14, 2008 claims bar date.  Pursuant to the

10  Court's prior order, the FDIC may submit an opposition brief on or before October 3,

11  2008 and Plaintiff may reply on or before October 7, 2008.

12         Nothing is therefore lost by the FDIC, no prejudice will enure to the FDIC and

13  there is no possibility the FDIC will suffer irreparable injury, if the Temporary

14  Restraining Order remains in effect until October 14, 2008.  All parties, including the

15  FDIC, will then have been given the opportunity to fully brief the issues and present

16  oral argument to the Court.  In turn, the Court's ultimate decision will have benefitted

17  from having received full and complete arguments on these issues.  And, the entire

18  process will occur before the current claims bar date expires.  Therefore, the Court's

19  prior order has no prejudicial effect on the FDIC or its function as receiver under

20  FIRREA, and no good cause exists to grant the FDIC's *ex parte* application.

21

22  **4.      Plaintiff Did Not Request, Nor Does the Temporary Restraining Order**

23          **Require the FDIC to Produce Bank Records or Loan Files.**

24         The FDIC argues that the temporary restraining order is overly burdensome

25  because it requires the FDIC to produce millions of documents to Plaintiff.  That is

26  simply and completely untrue.  Plaintiff did not request that the FDIC produce all

27  bank records/loan files for Class Members, nor did the Court order such production.

28  Plaintiff merely sought only of the true identities, the names and addresses, of Class

1  Members.  This is the information needed to provide each of these individuals with

2  notice of their rights and administrative claims obligations under FIRREA.

3      In fact, in the time since the Court issued the TRO and the time the FDIC filed

4  its own counter *ex parte* application, the FDIC was able to very quickly identify the

5  number or loans originated by Indymac.  (See the declaration of Victor George

6  attached to the FDIC's *ex parte* application at ¶ 5).  If the FDIC is so quickly able to

7  identify the Option ARM loans it originated, it must also have the identities of Class

8  Member borrowers just as readily available.  The FDIC could no doubt produce a

9  spreadsheet or computer disk containing that readily ascertainable information.

10     In fact, the FDIC never contends that the information actually sought by

11 Plaintiff would be burdensome or oppressive.  Instead, the FDIC only tells the Court

12 how hard it would be to produce all loan documents for all 160,000 Option ARM

13 loans it originated.  Fortunately, that is not what Plaintiff seeks or what the Court

14 ordered.

15

16 **5.     The FDIC's Argument That Mailing Notice to Class Members Would Be**

17 **Overly Burdensome and Drain Resources From Other Creditors Is**

18 **Without Merit.**

19     To begin, the FDIC's argument that the TRO should be dissolved *ex parte* is

20 without merit because the Court has not yet ordered the FDIC to mail individual

21 notice to Class Members concerning the administrative claims process.  The Court's

22 previous order merely enjoins the FDIC from enforcing the October 14, 2008 claims

23 bar date set by the agency until the hearing on this matter, which is scheduled for

24 October 10, 2008 – before the expiration of the claims bar date.  There is no directive

25 or Court order in place at this time concerning the mailing of notice.

26     Secondly, the FDIC's argument that any such order would impose too severe a

27 burden is disingenuous.  Any such burden is easily avoided if the FDIC would simply

28 agree that Plaintiff may submit a single claims form on behalf of all Class Members.

Z:\1 ARM Loan Cases\Indymac\PLEADINGS\Opposition to FDIC ex parteapplication.wpd

1  In fact, that is exactly what Plaintiff suggested to the FDIC in an effort to informally

2  resolve these issues.  The FDIC flatly refused this solution, though there is nothing

3  found in FIRREA or anywhere else that would prohibit such a procedure.  Therefore,

4  any burden to the FDIC concerning mailing notice would be a self-imposed burden.

5

6  **6.   The FDIC's Argument That Class Members Have "Zero Chance" of**

7  **Success on the Merits is Nonsensical**.

8          The FDIC, after very recently inserting itself into this Option ARM litigation,

9  also tells this Court that Class Members have "zero chance" of success on the merits.

10  The FDIC argues this is so because a Court of Appeal in a different circuit – the 7th

11  Circuit – recently issued a ruling in  a TILA class action case (*Andrews*).  That

12  decision did not, however, rule on the merits of plaintiffs' claim that the defendant

13  violated TILA.  That court held only that, in that case, a rescission class should not

14  have been certified.  The Court's ruling did not say that the underlying claims for

15  violations of TILA were without merit or that if each Class Member individually

16  sought rescission based on TILA, each could not do so based on the merits of their

17  claims.

18          As this Court is aware, having overseen this Option ARM litigation for over a

19  year and having reviewed numerous motions concerning all the Class Members'

20  claims and the various basis for those claims, Plaintiffs' case is not limited to one

21  cause of action for violation of TILA.  In fact, Class Members have asserted claims for

22  fraudulent omission, breach of contract and violations of California's Unfair

23  Competition Law.  And, as was more thoroughly explained in Plaintiff's Application

24  for TRO, Plaintiff and Class Members have a great chance for success on the merits if

25  give a chance to proceed.  Class Members' claims against Indymac are meritorious.

26

27  **7.   Conclusion**

28          For the reasons set forth in this opposition, Plaintiff respectfully requests that

Z:\1 ARM Loan Cases\Indymac\PLEADINGS\Opposition to FDIC ex parte application.wpd

1    this Court deny FDIC's Application for *Ex Parte* Relief.

2

3                                        KIESEL BOUCHER LARSON, LLP

4    DATED: October 1, 2008

5                                         /s/ Michael C. Eyerly

6                                By:    PAUL R. KIESEL, ESQ.
                                        MICHAEL C. EYERLY, ESQ.
7                                       8648 Wilshire Boulevard
                                        Beverly Hills, California 90210
8
                                        JEFFREY K. BERNS, ESQ.
9                                       Arbogast & Berns LLP
                                        19510 Ventura Blvd, Ste 200
10                                      Tarzana, California 91356

11

12                                      Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Z:\1 ARM Loan Cases\Indymac\PLEADINGS\Opposition to FDIC ex parteapplication.wpd

PLAINTIFF'S OPPOSITION T O FDIC'S EX PARTE APPLICATION TO DISSOLVE TRO

# DECLARATION OF MICHAEL C. EYERLY

I, Michael C. Eyerly, declare as follows:

1.       I am an attorney duly licensed to practice law in the State of California and in this Court.  I am a partner of the law firm Kiesel Boucher Larson, LLP, counsel for Plaintiff in this class action.  I make this declaration based upon my own personal knowledge.

Executed this 2nd day of October, 2008 at Beverly Hills, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.


                                  /s/ Michael C. Eyerly

                              Michael C. Eyerly
                              8648 Wilshire Boulevard
                              Beverly Hills, California 90210

Z:\\ ARM Loan Cases\\Indymac\\PLEADINGS\\Opposition to FDIC ex parteapplication.wpd

PLAINTIFF'S OPPOSITION T O FDIC'S EX PARTE APPLICATION TO DISSOLVE TRO