Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
Miriam Schimmel (SBN 185089)
mschimmel@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street
Philadelphia, PA 19102
Phone: (214) 564-2300
Fax:    (215) 851-8029

David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax: (310) 861-1775

*Attorneys for Plaintiffs,*
*on behalf of themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVA M. SPICER, DEBRA TREAT, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ONE WEST BANK, F.S.B.; FEDERAL DEPOSIT INSURANCE COMPANY as Receiver for INDYMAC BANK, F.S.B.; and DOES 1 through 200, inclusive, <br><br> Defendants. | CASE NO: CV07-03456 AHS (FMOx) <br><br> [Hon. Alicemarie H. Stotler] <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR**: <br><br> (1)    Fraudulent Omissions; <br><br> (2)    Violation of Bus. & Prof. Code §17200, et seq. – "Unlawful," "Unfair" and "Fraudulent" Business Practices; <br><br> (3)    Breach of Contract; and <br><br> (4)    Tortious Breach of the Covenant of Good Faith and Fair Dealing. <br><br> **<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs, GENEVA SPICER and DEBRA TREAT ("Plaintiffs"), individually, and on behalf of all others similarly situated, allege as follows:

## I.

## INTRODUCTION

1.      This is an action pursuant to California's Unfair Competition Law (the "UCL"), Bus. & Prof. Code §§ 17200, et seq., and other California statutory and common law.  Plaintiffs, individually, and on behalf of all others similarly situated, bring this action against ONEWEST BANK, FSB, and the FEDERAL DEPOSIT INSURANCE COMPANY, as Receiver for Defendant INDYMAC BANK, F.S.B., and DOES 1 through 200 ("Defendants"), based upon Defendants' non-disclosure and fraudulent concealment of material information relating to Defendants' Option Adjustable Rate Mortgage ("Option ARM") loan documents, and in the accompanying required disclosure statements, including: (i) the actual interest rate on the note(s); (ii) that the initial interest rate disclosed in the Note would last only one month, was discounted, and was substantially lower than the actual interest that Plaintiffs and Class members would be charged on the Notes; (iii) that the amount of monthly payments provided for in the Note and for the first 2-5 years in the Truth in Lending Disclosure Statement ("TILDS") was based entirely on the "teaser" rate; and (iv) that, after one month the scheduled monthly payment would not be sufficient to even pay the interest being charged, let alone amortize the loan, so that each month the principal balance would increase even if the payments were made as scheduled.  (Hereinafter, (i) through (iv) shall be referred to as "The Material Omissions").

\ \ \

\ \ \

\ \ \

## II.

## THE PARTIES

2.      Plaintiff GENEVA SPICER is, and at all times relevant to this Complaint was, an individual residing in Monrovia, California.  On or about August 1, 2005, Plaintiff entered into an Option ARM loan agreement with INDYMAC BANK, F.S.B., which was secured by her 432 E. Los Angeles Avenue, Monrovia, California residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Statement ("TILDS") and Program Disclosure (collectively the "Loan Documents"), pertinent to this action.

3.      Plaintiff DEBRA TREAT is, and at all times relevant to this Complaint was, an individual residing in Imperial Beach, California.  On or about January 9, 2006, Plaintiff entered into an Option ARM loan agreement with INDYMAC BANK, F.S.B., which was secured by her 1403-5 14th Street, Imperial Beach, California residence.  Attached hereto as Exhibit 2 is a true and correct copy of the Note and Truth and Lending Disclosure Statement ("TILDS") and Program Disclosure (collectively the "Loan Documents"), pertinent to this action.

3.      Defendant ONEWEST BANK, FSB ("ONE WEST") is, and at all relevant times was a corporation, or was and is qualified to do business in California, and doing business in this judicial district.  At some time in or around March 19, 2009, ONE WEST purchased the subject loans as part of a Loan Sale Agreement from the Defendant FEDERAL DEPOSIT INSURANCE COMPANY , as Receiver for INDYMAC BANK, FSB (collectively "INDYMAC"). At all relevant times hereto, ONEWEST BANK was engaged in the business of originating and selling the Option ARM loans that are the subject of this Complaint.  ONE WEST assumed all liabilities of INDYMAC, including the Option ARM loans which are the subject of this complaint.  As such, ONE WEST,

1   at all relevant times herein, was engaged in the business of servicing and

2   administering the Option ARM Loans which are the subject of this Complaint.

3   ONE WEST transacts business in Los Angeles County, California.  ONE WEST

4   has significant contacts with Los Angeles County, California, and the activities

5   complained of herein occurred, in whole or in part, in Los Angeles County,
    California.

6        4.     Defendant FEDERAL DEPOSIT INSURANCE COMPANY

7   ("FDIC") is, and at all relevant times was, a corporation, or was and is qualified to

8   do business in California, and doing business in this judicial district.  On July 11,

9   2008, INDYMAC was closed by the Office of Thrift Supervision (OTS) and the

10  FDIC was named Receiver. As part of its duties and responsibilities as Receiver

11  for INDYMAC, at all relevant times hereto, FDIC was engaged in the business of

12  servicing and administering the Option ARM loans that are the subject of this

13  Complaint.  Defendant transacts business in Los Angeles County, California and at

14  all relevant times originated and sold Option ARM loans throughout the State of

15  California, including Los Angeles County, California.  Defendant has significant
    contacts with Los Angeles County, California, and the activities complained of

16  herein occurred, in whole or in part, in Los Angeles County, California.

17       5.     From its headquarters in Pasadena, California, Defendant ONE WEST

18  BANK ("ONE WEST") purchased, was assigned, assumed, acquired or otherwise

19  received the Option ARM loans that are the subject of this complaint.  ONE WEST

20  bought a significant number of the subject Option ARM loans made to California

21  residents by lenders like INDYMAC.  Plaintiff is informed and believes and

22  thereon alleges that ONE WEST's employees and/or agents responsible for the

23  purchase, receipt, handling and servicing of the subject Option ARM loans that are
    located in California and/or the decisions concerning continuing servicing, receipt

24  of payment and application of payments based upon the loans Plaintiffs and the

Class members obtained originally through INDYMAC and were further serviced, handled, and/or administered by ONE WEST's corporate officers, executives and employees located in California.

6.      At all times mentioned herein, Defendants were engaged in the business of purchasing, acquiring, receiving, administering, servicing, and/or owning, and/or are or were the assignees of the Option ARM loans that are the subject of this Complaint, throughout the State of California, including in Los Angeles County, California.

7.      Plaintiffs are informed, believe, and thereon allege, that each of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the conduct of Defendant.

8.      Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants sued herein was the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

9.      Plaintiffs are informed, believe, and thereon allege, that at all times herein mentioned, each Defendant was acting in concert or participation with each other, or was a joint participant and collaborator with the others in the acts complained of, and/or was the agent or employee of the others in doing the acts complained of herein, each and all of them acting within the course and scope of

said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.  Each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

10.     Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 200, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered.

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 200, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of Court to amend this Complaint when the names of said DOE defendants have been ascertained.

### III.

### JURISDICTION AND VENUE

12.     Each Defendant resides in this District within California and is a corporation duly licensed to do business in California.  Defendants also transacted business and committed the acts complained of herein in California.

13.     Venue is proper in California because the acts complained about occurred in California and Plaintiffs and many of the Class Members reside in Los Angeles, California.

**IV.**

**FACTS COMMON TO ALL CAUSES OF ACTION**

14.     The Option ARM loans that are the subject of this Complaint are the loans sold and/or serviced by Defendants with the following common characteristics: (i) the Monthly Payment Amount stated in the Note is based upon a low "teaser"  interest rate which ranges from 1% to 3%; (ii) the payment schedule listed in the Truth-In-Lending Disclosure Statements ("TILDS"), for the first 2-5 years of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) in fact, the interest rate "adjusts" after only one month to a much higher rate that is the sum of the "index" and the "margin"; and (iv) after the first 2-5 years, the amount of monthly payments balloons to a much greater amount.

15.     At all times material hereto, the index plus margin was never low enough to be close to the "teaser" rate,  so that, after only one month, the interest accruing on the Note more than doubled from an amount that was usually below 2% to an amount of at least 4%, and normally closer to 8%.  Indeed, the average interest rate on these loans was approximately 7.87%, fully 2 percentage points higher than the prevailing rate on Defendants' fixed rate loans.  Because of this dramatic interest rate adjustment after only one month, the monthly payment, which was calculated based on a fully amortizing payment at the low teaser rate, was no longer sufficient to even pay the interest that accrued on the Note, and the balance owed increases even if the payments are made as scheduled on the Note and the TILDS.  This process is known as negative amortization, and Defendants knew, but did not disclose to Plaintiffs and Class members, that it was certain to

occur because of the large spread between the teaser rate and the combined index and margin

16.     Because of the way these Option ARM loans were structured and serviced by Defendants, it was certain that, as payments were made each month for the first 2-5 years of the loan, each Class Member would owe more money than he or she did at the start of the loan, and have less time to pay it back.  To make matters worse, this "deferred interest" was added to the principal balance and, in turn, accrued more interest – in effect using compound interest to increase the balance owed by each borrower.

17.     These undisclosed facts were known to Defendants.

18.     The fact that negative amortization is certain to occur on the subject loans was information that Plaintiffs and Class Members would have found material when deciding whether to purchase the subject Option ARM loan. Despite this, Defendants never disclosed to Plaintiffs and Class Members this material information.  Had Defendants disclosed this material information, Plaintiffs and Class Members would not have purchased the loan products.

19.     As reasonable consumers, Plaintiffs and Class members would find information regarding the interest rate on the loan and the amount of the monthly payments material, including, without limitation, the fact that negative amortization was certain to occur if the monthly payment schedule, given to Plaintiffs and the Class Members prior to entering into the loans, was followed. The subject Loan Documents failed to disclose this material information to borrowers before they entered into the loans.  Moreover, the Loan Documents presented to borrowers at the time of closing, contained partially true statements but failed to provide all of the true facts, and thus, the subject Loan Documents were false and/or misleading.  For instance, Defendants disclosed a teaser interest rate, but they did not disclose that this rate would sharply increase after only one

month.  Defendants disclosed a low monthly payment for the first 2-5 years of the loan, which was based on the teaser rate, but this did not reflect the actual amount of interest being charged or the amount Plaintiffs and Class Members actually owed each month to prevent negative amortization.

20.     Before they entered into the subject Option ARM Loan, Plaintiffs and Class Members were not informed of the sharp increase in the interest rate, and the fact that their monthly payments were not enough to pay the interest accruing on the loan, until they had made at least several payments following the closing of the loan, at which time they would receive a statement showing that the principal balance had increased since Defendants had increased the interest rate from the teaser rate, despite the fact that the borrower had made all payments as scheduled.

21.     By the time Plaintiffs and Class Members realized that the Option ARM loans at issue were certain to cause negative amortization to occur for the first 2-5 years of the loan, they were "locked" into the loan by a draconian prepayment penalty consisting of a prepayment charge equal to the interest that would accrue during a six-month period of the amount prepaid (if the prepayment amount was greater than 20% of the original principal amount stated in the Note), which was calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment for a prepayment occurring during the first two to three years of the loan.  See "Prepayment Penalty Addendum", Exhibits 1-2, attached hereto.  This draconian provision was originally designed and continued to be serviced by Defendants to deter anyone from refinancing the loan during the applicable time period.

22.     Before Plaintiffs and Class Members entered into the subject Option ARM loan, Defendants failed to disclose and concealed the amount by which the borrowers' loan balances would increase over the first two to three years of the loan, even though Defendants had actually performed this calculation internally

and thus knew the truth.  This increase in the loan balance was material information to any consumer entering into these loans, because it effectively strips them of the equity in their homes, while also greatly impairing their ability to refinance these loans once they recast to substantially higher monthly payments.

23.     The loans were structured by Defendants so that once Plaintiffs and Class Members were able to discover that their loans were negatively amortizing, they could get out of the loans only by incurring a substantial prepayment penalty, or waiting two to three years, in which case they would have to refinance a substantially larger principal amount.

24.     Each subject Option ARM loan has so-called payment caps, which provide that, even after the monthly payment increases, it will not increase by more than 7.5% per year.  See Exhibits 1-2, ¶ 3(D).  These payment caps are, however, subject to an overall cap on principal of 110% of the original loan amount. See Exhibits 1-2, ¶ 3(F).  Once the loan principal reaches this 110% cap, the 7.5% limitation on payment increases no longer applies, and the payment generally will increase by far more than this amount.  The existence of this built-in "payment shock" was material information that Plaintiffs and Class Members would have found to be material in deciding whether to purchase the loans, and how much to finance, as this "payment shock" is more than many Class Members could afford to pay.

25.     However, the most that Defendants' loan documents said about negative amortization was that it "may" occur (and, thus, that it also may not occur). .  This was misleading and deceptive, because it implies that negative amortization was subject to some future contingency, such as an increase in the index on which the adjustable rate was purportedly based, when, in fact, it was guaranteed to occur after only one month, even if the index stayed the same or went down.

26.    The failure of Defendants to disclose this material information in the loan documents violated California consumer protection statutes, and common law, as more fully set forth below.

27.    Defendants' sharp increase in the interest rate after only one month, which guaranteed negative amortization, also violated the terms of Defendants' own contract with Plaintiffs and Class Members, and also breached the covenant of good faith and fair dealing.

28.    The loan characteristics described above were true of the named Plaintiffs' loans.  These were also the common characteristics of the standardized Loan Documents used by Defendants during the liability period.  It is these Loan Documents that are the subject of this Complaint.

**V.**

**CLASS ACTION ALLEGATIONS**

29.    Plaintiffs bring this action on behalf of themselves, on behalf of all others similarly situated, and on behalf of the General Public.  The Class Plaintiffs seek to represent is defined as follows:

> All California residents who, from May 25, 2003 through
> the date that notice is mailed to the Class members,
> entered into an INDYMAC Option ARM loan on their
> home located in the State of California.  Excluded from
> the California Class are Defendants' employees, officers,
> directors, agents, representatives, and their family
> members, as well as the Court and its officers,
> employees, and relatives.

Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-

Classes in response to facts learned through discovery or legal arguments advanced by Defendants or otherwise.

30.    This action has been brought and may be properly maintained as a class action pursuant to the provisions of California Code of Civil Procedure § 382 and other applicable law.

31.    **Numerosity**:  - Code of Civ. Proc. § 382:  Members of the Class are so numerous that their individual joinder is impracticable.  While the exact number of class members is unknown at this time, Plaintiffs are informed and believe that the entire Class consists of approximately tens of thousands of individuals residing in California.   Also, while the precise number of Class members and their addresses are presently unknown to Plaintiffs, Plaintiffs are informed and believe that the number can be obtained from the Defendants' records.  Class members may be notified of the pendency of this action by electronic mail, the Internet, other mail, or published notice.

32.    **Commonality:**  - Code of Civ. Proc. § 382:  Common questions of law or fact are shared by class members.  This action is suitable for class treatment, because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following questions including questions related to the subject Option ARM loans:

(a)    Whether Defendants engaged in unlawful, unfair and/or fraudulent business acts or practices likely to deceive Plaintiffs and Class Members before and during the loan application process;

(b)    Whether Defendants concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under state consumer protection statutes, and/or California common law;

(c)     Whether Defendants failed to disclose to Plaintiffs and Class Members, before they entered into the subject Option ARM loans, that negative amortization was certain to occur;

(d)     Whether Defendants had a duty to disclose the undisclosed material facts regarding the subject Option ARM loans

(e)     Whether Defendants' failure to apply Plaintiffs' and Class Members' payments to principal as promised in the form Notes constitutes a breach of contract, including a tortious breach of the covenant of good faith and fair dealing;

(f)     Whether Defendants' conduct in immediately raising the interest rate on the loans so that no payments were made to the principal balance breached the loan contract and/or constitutes a contractual or tortious breach of the covenant of good faith and fair dealing;

(g)     Whether the terms and conditions of the Loan Documents are unconscionable;

(h)     Whether the Loan Documents are non-negotiable instruments;

(i)     Whether Plaintiffs and Class Members are entitled to damages;

(j)     Whether Plaintiffs and Class Members are entitled to punitive damages; and

(k)     Whether Defendants' affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and Class Members as a whole.

33.     **Typicality**:  Plaintiffs' claims are typical of the claims of absent Class Members.  Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class Members are based on the same legal theories.

34.   **Adequacy**:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with those of the other members of the Class Plaintiffs seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

35.   **Ascertainable Class**:  The proposed classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

36.   **Superiority and Substantial Benefit**:  A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and the Class members' claims.  The damages suffered by each individual Class member may be limited.  Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis.  Even if members of the Class themselves could afford such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties and the court system, due to the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

37.   In the alternative, the Class should be certified because:

(a)   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class, and/or the General Public, thereby making appropriate final and injunctive relief with respect to the Class as a whole.

## VI.

## FIRST CAUSE OF ACTION

### Fraudulent Omissions

### (Against All Defendants)

38.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

39.     Under California common law, Defendants had a duty to disclose to Plaintiffs, and each Class Member that: (i) the promised low teaser interest rate was only available for thirty days if at all; (ii) the payment amount for the first two to five years provided to Plaintiffs and Class Members on the TILDS was insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendants; and that (iv) loss of equity and/or loss of Plaintiffs' and Class Members' residence was certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendants.  These facts constitute material information that Plaintiffs and Class Members would have found material when deciding whether to purchase the loan product.  Had Defendants disclosed this information, Plaintiff and Class

Members would not have entered into the subject Option ARM Loan on these terms.

At all relevant times, Defendants actively concealed these material facts from Plaintiffs and Class Members.  At all relevant times, Defendants had superior, if not exclusive, knowledge of the concealed facts.  Where Defendants did make disclosures, they made partial representations while suppressing materials facts, as demonstrated herein.

40.    In each of the Loan Documents at issue, Defendants actively concealed and failed to disclose to the borrower that each payment in years 1-3, is insufficient to pay all of the interest, let alone, any of the principal.  The Loan Documents state under "BORROWERS FAILURE TO PAY AS REQUIRED," that "[t]he amount of the charge will be 5.0000% [or other similar percentage] of my overdue payment of Principal and Interest" (emphasis added).  See Exhibits 1-2, ¶ 7(A).  These partial representations failed to disclose that the monthly payment amounts prescribed in the TILDS and also stated in the Note (at ¶ 3(B) of Exhibits 1-2 of the attached Plaintiffs' Loan Documents and similarly for each Class Member) were certain to result in negative amortization.

41.    The Loan Documents further state that, at ¶3E "my monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal" (emphasis added) (see Exhibits 1-2, ¶3E).  However, the Loan Documents fail to disclose the material fact that the payment schedules provided by Defendants in the TILDS could not possibly cover the amount of interest due under any conceivable index rate plus the margin after the first 30 days.

42.    The Notes list an interest rate and a payment amount based on the initial teaser interest rate.  However, the TILDS Defendants gave to Plaintiffs and Class Members before they entered into the subject loans included a schedule of

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. CV07-03456 AHS (FMOx)

payments (including that initial payment amount) but disclose a different, much higher interest rate.  By stating the low teaser rate and associated monthly payment in the Note, and stating the much higher interest rate in the TILDS accompanied by a payment schedule based on the low teaser rate, Defendants failed to disclose the actual interest costs that borrowers were going to accrue on their loans.

43.    Defendants purposefully and intentionally devised this Option ARM loan scheme of stating only partially true facts and omitting important material information in order to deceive consumers into believing that these loans would provide a low-interest rate for the first two to five years of the Note and that, if they made their payments according to the payment schedule provided by Defendants, this would be sufficient to pay both principal and interest.

44.    Defendants also actively concealed and failed to disclose information regarding the payment caps associated with the loans, and concealed and failed to disclose that during the entire time the payment caps were in effect, negative amortization was certain to occur if the payment schedule provided prior to entering into the loans was followed.  Defendants knew or should have known that this loan product had a variable rate with payment caps and that the Loan Documents omitted the Material Omissions, including that negative amortization was a certainty.  Defendants also knew or should have known that the loans were guaranteed to result in negative amortization, because Defendants accrued the negative amortization as income for accounting and/or tax purposes. Defendants were also aware the negative amortization was certain to occur, because, in computing the total finance charge payable over the full life of the loan for purposes of compiling the TILDS payment schedule, Defendants included the interest on "deferred interest," which would accrue because the scheduled payments were insufficient to pay all interest due on the loan.  The loan documents

did not disclose the fact that negative amortization was a certainty, or the amount of the total finance charge that resulted from this negative amortization.

45.     The only places in the Notes that even inferentially reference negative amortization suggest that negative amortization was merely a possibility, rather than an absolute certainty.  For instance, Defendants stated in the Notes, at ¶ 3(E), that the borrower's "monthly payments could be less than or greater than" necessary to cover all of the interest due on the Notes, which was a half-truth, and intended to conceal the whole truth, because it did not state that the payment schedule provided by Defendants would absolutely guarantee that negative amortization was going to occur on these loans.

46.     The Loan Documents of Defendants were deceptive and misleading, in that the payments for up to the first five years of the loans bear no relationship to the APR listed in the TILDS.

47.     At all times relevant during the liability period, the Loan Documents were misleading, omitted and concealed material information, and were unlawful, in that the Notes and TILDS did not disclose that the liability that Plaintiffs and Class Members were incurring was substantially greater than the amount of their scheduled payments.

48.     Defendants failed to disclose to Plaintiffs and Class Members that the initial interest rate was discounted, and that it was absolutely certain to substantially increase after only one month, even when the index did not rise.  To the extent that Defendants did in any way provide a disclosure stating that the initial payment was not based on the index, they failed to do so in a manner that was clear and conspicuous, and that did not obscure its importance, or that was designed to be reasonably understood by the ordinary consumer. Rather than accurately disclose that the interest rate would increase after only one month, the

Loan Documents misleadingly stated that the initial payment was based on a "yearly rate" of 1-3%.

49.    Defendants also failed to disclose to Plaintiffs and Class Members before they entered into the subject Option ARM loans all of the ways by which the interest rate applicable to the subject loans could increase.

50.    At all times relevant during the liability period, Defendants provided Plaintiffs and Class Members with Notes that state: "I will pay interest at a yearly rate of [1.000% - 3.000%]." See Exhibits 1-2, ¶2(A). However, in the TILDS, the box entitled "ANNUAL PERCENTAGE RATE" describes the APR as "[t]he cost of your credit as a yearly rate" and then lists a much higher APR than the rate listed in the Notes. For instance, Plaintiff GENEVA SPICER, the TILDS lists an APR of "6.354%." See Exhibit 1, TILDS. Plaintiff DEBRA TREAT's TILDS lists an APR of "7.183%." See Exhibit 2.

51.    Thus, the listed APR in the Notes would actually conflict with the APR stated in the TILDS. For instance, in the case of Plaintiff GENEVA SPICER, the "1.950%" APR stated in the Note contradicts the "6.354%" APR that Defendant stated in the TILDS. In the case of Plaintiff DEBRA TREAT, the stated APR "2.2%" in the Note contradicts the "7.183%" APR which Defendant stated in the TILDS.

52.    At all times relevant during the liability period, Defendants failed to clearly and conspicuously explain in the Note or TILDS that the low rate (the same rate upon which Defendant based the written payment schedule provided to Plaintiffs) was offered only for the first thirty (30) days of the loan. Any reasonable borrower would find such omitted information material.

53.    Defendants also concealed and failed to disclose to Plaintiffs and Class Members that the APR listed in the TILDS was not the APR used to determine the first five years of payments listed in the very same TILDS, and that

the listed payment amounts for the first five years of the loan were based on the artificially low interest rate stated in the Note, which Defendants knew would actually apply for no more than thirty days.

54.     The disclosures are required because they are material, and indeed, form the core basis for Plaintiffs and Class Members to make an informed decision by comparing the cost of credit to other proposals.  It therefore was incumbent upon Defendants to clearly and accurately disclose to Plaintiffs and the Class members before they entered into the subject Option ARM loans the composite interest rate, and the amount of payments based thereon, so that these borrowers could understand exactly what they would be paying for the loan.

55.     At all times relevant, Defendants had a duty to disclose to Plaintiffs and the Class Members, before they entered into the subject Option ARM loans: (i) that the payment schedule for the first two to five years was not based upon the APR listed on the TILDS; (ii) that negative amortization will occur and that the "principal balance will increase"; (iii) that the initial interest rate on the Note was discounted; and (iv) the applicable annual percentage rate ("APR").

56.     As a direct and proximate result of Defendants' failures to disclose and omission of material facts, as alleged herein, Plaintiffs and Class Members have suffered damages, which include, but are not limited to, the loss of equity in their homes, which Plaintiffs and each Class Member had in their homes prior to entering these loans.

57.     The wrongful conduct of Defendants, as alleged herein, including Defendants' placing of their corporate and/or individual profits over the rights of others, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiffs and Class Members, and particularly vile, base, contemptible, and wretched. Defendants' scheme, though couched as part of a legitimate bank's legitimate

lending operations, was in fact like any other financial fraud scheme intended to deprive unwitting consumers of their money by concealing material, truthful facts about the financial transactions at issue. Defendants' acts and/or omissions were performed by officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions. Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiffs and the general public.   Accordingly, Plaintiffs and Class Members are entitled to an award of punitive damages against Defendants in an amount to deter them from similar conduct in the future.

58.     WHEREFORE, Plaintiffs and Class Members are entitled to all legal and equitable remedies provided by law, including but not limited to actual damages, exemplary damages, prejudgment interest and costs.

## VIII.
## SECOND CAUSE OF ACTION
### Violation of California's Unfair Competition Law,
### Bus. & Prof. Code §§ 17200 et. seq.
### "Unlawful," "Unfair" and "Fraudulent" Business Acts or Practices
### (Against All Defendants)

59.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

60.     Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class Members, and in their capacity as private attorney generals against all Defendants for their unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business & Professions Code section 17200

et seq. ("UCL") which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

61.     Plaintiffs assert these claims as they are representatives of an aggrieved group and as  private attorneys general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the restitutionary remedy provided by California Business & Professions Code §§ 17200, et seq.

62.     Plaintiffs and Class Members were consumers who applied for mortgage loans through Defendants.  During the loan application process, in each case, Defendants uniformly failed to disclose and omitted material information that was known only to themselves and that could not reasonably have been discovered by Plaintiffs and Class Members as set forth in the preceding counts.

63.     Based on the Material Omissions and Defendants' other partially true statements and failures to disclose as alleged herein, Plaintiffs and Class Members agreed to finance their home through Defendants' Option ARM loans, and have been actually harmed.

64.     As a direct and proximate result of the Loan Documents they designed, Defendants intended that Plaintiffs and Class Members would be misled into believing that, if they made payments based on the payment schedule provided to them by Defendants before they entered into the subject loans, the principal balance would not increase with each payment when in fact it actually increased with each payment.

65.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, et seq.

66.     Defendants' misconduct, as alleged herein, gave them an unfair competitive advantage over competitors that did not engage in the same unlawful and unfair lending practices.

67.     <u>Unlawful</u>:  The unlawful acts and practices of Defendants alleged above constitutes unlawful business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, et seq.  Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations - federal and/or state, statutory and/or common law - and said predicate acts are therefore per se violations of §17200, et seq.  These predicate unlawful business acts and/or practices include, but are not limited to, the following: California Civil Code §§ 1572 (Actual Fraud - Omissions), 1573 (Constructive Fraud by Omission), and 1710 (Deceit), and other statutory and common law in effect.

68.     <u>Unfair</u>: Defendants' omissions and misconduct as alleged in this action constitutes negligence and other tortiuous conduct and this misconduct gave Defendants an unfair competitive advantage over their competitors.

69.     Defendants'  misconduct as alleged in the Material Omissions and otherwise herein caused Plaintiffs and Class Members substantial injury by causing a resulting loss of equity in their homes, because Defendants failed to disclose and/or omitted material information that the Option ARM loans: 1) were certain to result in negative amortization if the disclosed payment schedule was followed; 2) had absolutely no countervailing benefit to consumers or to competition that could possibly outweigh this substantial injury; and 3) caused  injury that could not have been avoided or even discovered by the consumers, because it resulted from Defendants' failure to disclose and/or omission of material information that only the Defendants knew or could have known.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. CV07-03456 AHS (FMOx)

70. Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over competitors.

71. The harm to Plaintiffs, members of the general public and Class Members outweighs the utility, if any, of Defendants' policies, acts and/or practices, and consequently Defendants' conduct herein constitutes an unfair business act or practice within the meaning of California Business & Professions Code §§ 17200, et seq.

72. <u>Fraudulent</u>: Through their omissions and/or acts, practices and non-disclosures as alleged herein, Defendants designed the Loan Documents in order to deceive the public through the Material Omissions leading to consumer confusion, including, but not limited to the fact that, for the first two to five years, the loans were negatively amortizing loans. Said omissions, acts, practices and non-disclosures as alleged herein therefore constitute fraudulent business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, et seq.

73. Defendants' conduct, as fully described herein, was designed to and was therefore likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose and their omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

74. As a direct and proximate result of the aforementioned omissions, acts and practices, Defendants received monies and continue to hold the monies expended by Plaintiffs and Class Members similarly situated who purchased the Option ARM loans as described herein.

75. The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendants' Loan Documents at issue, as described herein. Plaintiffs and other members of the general public have no

other remedy of law that will prevent Defendants' misconduct as alleged herein from occurring and/or reoccurring in the future.

76.     As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost hundreds of thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and has lost money or property as a result of Defendants' unfair competition.

77.     WHEREFORE, Plaintiffs and Class Members are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of the unfair, fraudulent, and deceptive acts and/or practices, attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from the unfair, fraudulent and deceitful activity alleged herein.

**IX.**

**THIRD CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

78.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

79.     Plaintiffs and Class Members entered into a written home loan agreement – the contract or Note – with Defendants which describe terms and respective obligations applicable to the parties herein.

80.     Defendants drafted the Notes, continued to enforce the terms of the Notes, and did not allow Plaintiffs or Class Members any opportunity to make changes to the Notes and, due to Defendants' superior bargaining position, the Notes were offered on a "take it or leave it" basis.  As such, the Notes and the prepayment penalty riders to the Notes are contracts of adhesion.

81.     Each Note and TILDS expressly and impliedly required Defendants to apply Plaintiffs' and Class Members monthly payments to both principal and interest on a fully-amortized basis (i.e., so that negative amortization would not occur) as long as those payments were in the amount reflected in the Note and the TILDS.  The Notes and the TILDS identified the monthly payments Plaintiffs and the Class Members were required to make.  Defendants were not permitted to impose or charge any different payment amount.  As alleged herein, the Notes expressly state and/or imply that those payments would be applied to pay both principal and interest on the loan.

82.     Shortly after Plaintiffs and Class Members entered into these loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they promised to Plaintiffs and Class Members as a "yearly rate." Defendants also demanded payments in amounts that exceeded those permitted by the Notes.

83.     As a result of Defendants' breach of the agreement, Plaintiffs and Class Members have suffered harm.  Plaintiffs and Class Members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and Class Members' principal loan balance.  Furthermore, Defendants' breach has placed Plaintiffs and Class Members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class Members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

84.     At all times relevant, there existed a gross inequality of bargaining power between the parties to the Loan Documents.  At all times relevant, Defendants unreasonably and unconscionably exploited their superior bargaining position and knowledge and foisted upon Plaintiffs and Class Members extremely

harsh, one-sided provisions in the contract, which Plaintiffs and Class Members were not made aware of and could not reasonably have comprehended  (e.g., Defendants' fraud and failures to disclose as alleged herein), and which attempt to severely limit Defendants' obligations under the contracts at the expense of Plaintiffs and Class Members, as alleged herein.

85.     WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief, compensatory damages proximately caused by Defendants' breach of contract as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.


# X.

## FOURTH CAUSE OF ACTION

### Tortious Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

86.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

87.     As a direct and proximate result of the omissions and failures to disclose as alleged herein, Plaintiffs and Class members reasonably expected that their payments for the first two to five years of Defendants' loans would lower the balance due under the loans, thereby building up Plaintiffs' and the Class Members' equity in their homes.

88.     At all times relevant during the liability period, Defendants consciously and deliberately failed to apply Plaintiffs' and Class Members' payments in accordance with the reasonable expectations of Plaintiffs and the Class Members and uniformly misapplied the payments therein, which unfairly

frustrated the agreed common purposes and disappointed the reasonable expectations of Plaintiffs and Class Members.

89.     Defendants uniformly and unfairly interfered with Plaintiffs' and Class Members' rights to receive the principal benefit of the contract, i.e., ownership of their homes.  Defendants' loans have stripped away a substantial portion of the equity Plaintiffs and Class Members had in their homes and, in some cases, have actually resulted in the complete loss of their homes through foreclosure.

90.     Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the Option ARM loans at issue, and sold these Option ARM loans at issue throughout the State of California, including Los Angeles County.

91.     Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiffs and the general public.

92.     At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

93.     As a result of Defendants' conduct, Plaintiffs and Class Members have suffered harm.  Plaintiffs and Class Members have incurred significantly increased debt that is secured by their homes.  Plaintiffs and Class members also have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest that is added to their principal loan balances.

Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiffs and Class Members in danger of losing their homes through foreclosure and limited these consumers' ability to obtain alternative home loan financing.

94.     WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief, all damages proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XI.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all Class Members pray for judgment against each Defendant, jointly and severally, as follows:

A.     An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.     For actual damages according to proof;

C.     For compensatory damages as permitted by law;

D.     For consequential damages as permitted by law;

E.     For punitive damages as permitted by law;

F.     For equitable relief, including restitution;

G.     For restitutionary disgorgement of all profits Defendant obtained as a result of their unfair competition;

H.     For interest as permitted by law;

I.     For Declaratory Relief;

J.     For reasonable attorneys' fees and costs; and

K.   For such other relief as is just and proper.

DATED: July 20, 2009                    **SEEGER WEISS LLP**

                          By:     /s/ Jonathan Shub
                                  Jonathan Shub
                                  Miriam L. Schimmel
                                  1515 Market Street, Suite 1380
                                  Philadelphia, PA 19102
                                  Telephone:   (215) 564-2300
                                  Facsimile:    (215) 851-8029

                                  David M. Arbogast, Esq.
                                  Jeffrey K. Berns, Esq.
                                  ARBOGAST & BERNS LLP
                                  19510 Ventura Boulevard, Suite 200
                                  Tarzana, California 91356
                                  Phone: (818) 961-2000
                                  Fax:    (818) 654-5988

                                  Attorneys for Plaintiffs and all others
                                  Similarly Situated


## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury to the full extent permitted by law.


DATED: July 20, 2009                    **SEEGER WEISS LLP**

                          By:     /s/ Jonathan Shub
                                  Jonathan Shub
                                  Miriam L. Schimmel
                                  1515 Market Street, Suite 1380
                                  Philadelphia, PA 19102

                                  David M. Arbogast, Esq.
                                  Jeffrey K. Berns, Esq.
                                  ARBOGAST & BERNS LLP
                                  19510 Ventura Boulevard, Suite 200
                                  Tarzana, California 91356

                                  Attorneys for Plaintiffs and all others
                                  Similarly Situated